WILLIAM H. DOTSON v. ALLIED CHEMICAL CORPORATION AND WILLIAM LOWNDES CAIN

No. 62

(Filed 12 May 1971)

**Evidence § 50— exclusion of testimony as to expert witness' specialty — harmless effect**

In an action to recover for injuries allegedly sustained in an automobile accident, the fact that plaintiff's expert medical witness was not allowed to explain his specialty of orthopedic surgery or to state his qualifications and length of training *held* not prejudicial to plaintiff under the facts of this case, especially where the jury never reached the issue of damages.

ON *certiorari* to the Court of Appeals.

At November 17, 1969 Session of WAKE Superior Court, *Bailey, J.*, in accordance with the verdict, entered judgment for defendant. On plaintiff's appeal, the Court of Appeals awarded a new trial. 10 N.C.App. 123, 178 S.E. 2d 27. On defendant's petition, *certiorari* to review the decision of the Court of Appeals was allowed.

Plaintiff instituted this action on July 9, 1968, to recover damages for personal injuries allegedly caused by a collision of automobiles that occurred July 24, 1965, on U. S. Highway 301 "approximately 1.3 miles south of Weldon." The cars were proceeding north in a line of traffic on this two-lane highway. The front of the 1964 Chevrolet operated by defendant Cain struck the rear of the 1964 Oldsmobile operated by plaintiff and the front of the car operated by plaintiff struck the rear of the car immediately in front of it, a 1959 Oldsmobile (Smith car). The driver of a station wagon "about four cars" ahead of plaintiff had stopped to wait for southbound traffic to pass before making a left turn from 301.

---

---

The judgment recites that the following issues were submitted to the jury: "1. Were the plaintiffs injured by the negligence of the defendant William Lowndes Cain? Answer: _____ 2. Was the defendant Cain operating the car on said date as the agent of the defendant Allied Chemical Corporation and in the course and scope of his employment as its agent? Answer: _____ 3. What amount of damages is the plaintiff Thelma Dotson entitled to recover? Answer: _____ 4. What amount of damages is the plaintiff William H. Dotson entitled to recover? Answer: _____ "

The jury answered only the first issue, which was answered, "No."

The court entered judgment "that the *plaintiff* recover nothing of the defendants and that the costs be taxed against the *plaintiff*." (Our italics.)

It appears from "PLAINTIFFS' APPEAL ENTRIES" that "(t)he plaintiffs" made various motions to set aside the verdict and excepted to the denial thereof; and that, after the judgment was signed, "the plaintiffs excepted" and gave notice of appeal.

*Yarborough, Blanchard, Tucker & Denson, by Charles F. Blanchard, for plaintiff appellee.*

*Smith, Anderson, Dorsett, Blount & Ragsdale, by Willis Smith, Jr., for defendant appellants.*

BOBBITT, Chief Justice.

An affidavit in the record contains the statement that "Charles F. Blanchard is counsel for the plaintiff William H. Dotson and Gene C. Smith is counsel for the plaintiff Thelma S. Dotson, which actions were consolidated and came on to be heard before The Honorable James H. Pou Bailey . . . and a jury."

The record contains the complaint, answer and reply in the William H. Dotson case. It does not contain any pleading, nor does it contain a judgment, in the Thelma D. Dotson case. It does contain *testimony* of Thelma D. Dotson. Apart from what appears in "PLAINTIFFS' APPEAL ENTRIES," nothing appears in the record before us indicating an appeal by Thelma D. Dotson was perfected.

With reference to the first issue, the controversy was whether negligence on the part of Cain proximately caused the collision and, if so, whether plaintiff was injured as a result of the collision. Since the record does not contain the court's charge to the jury, neither the court's instructions as to the law nor his review of the respective contentions of the parties is available for our consideration. If the cars were proceeding in a line of traffic at 40-45 miles per hour, as plaintiff's evidence tended to show, it may be the jury found that negligence of the driver of the station wagon, "about four cars ahead," was the sole proximate cause of the successive collisions. If the jury accepted Cain's testimony that when, "all of a sudden (he) saw (plaintiff's) red light come on," he put on his brakes and "just eased into (plaintiff)," and "felt very little force of the impact," the jury may not have been satisfied by the greater weight of the evidence that plaintiff suffered any personal injury as the result of the collision.

Plaintiff's evidence consisted of the transcript of his testimony when adversely examined by defendants on September 5, 1969, in New London, Connecticut, and of his testimony at trial; the testimony of Thelma D. Dotson, plaintiff's wife, and that of Dr. James L. Moore. The only evidence offered by defendants was the testimony of defendant Cain.

It was admitted by defendants, and the court found as a fact, that Dr. Moore was "a medical expert in the field of orthopedic surgery."

The Court of Appeals awarded a new trial on the ground the court refused to permit plaintiff's counsel to elicit testimony from Dr. Moore relating to the definition and meaning of "orthopedic surgery," the training and qualifications of an orthopedic surgeon, and the nature and length of his own training and practice. It was held the trial court's ruling in this respect constituted prejudicial error.

Admittedly, under certain circumstances the refusal to permit a party to develop testimony in detail as to the training and qualifications of an expert witness may constitute prejudicial error. Thus, where expert witnesses express conflicting or divergent opinions the jurors are entitled to have full information as to the training and qualifications of each to enable them to weigh and evaluate the testimony of each. Too, the

Dotson v. Chemical Corp.

exclusion of such evidence may be considered prejudicial when the fact in issue is the *extent* of a person's injuries. Here, the testimony of one expert witness is involved. It was admitted and established that he is "a medical expert in the field of orthopedic surgery." Nothing in the record indicates defendants challenged either the truthfulness of his testimony as to what was discovered by his own examination of plaintiff or the accuracy of the opinion expressed by him when answering a hypothetical question. Whether the court's ruling prejudiced plaintiff must be considered in the context of the facts narrated below.

Plaintiff first saw Dr. Moore at his office on Oberlin Road, Raleigh, N. C., on November 21, 1969, that is, on the Friday before the trial. Dr. Moore "took a history" from plaintiff and examined him. Thereafter, *assuming* the jury found by the greater weight of the evidence the facts to be as narrated in a long hypothetical question asked by plaintiff's counsel, Dr. Moore testified that in his opinion the conditions he found in plaintiff's neck, shoulder and left arm "might have occurred from this accident (of July 24, 1965)."

After the collisions, plaintiff talked with Smith and with Cain at the nearby New Yorker Cafe while awaiting the arrival of a State Highway Patrolman. According to plaintiff's testimony, he was "rather in a dazed condition" and told Smith and Cain "(his) neck was hurting awfully bad." According to Cain's testimony, plaintiff stated time and again he was not hurt and, in response to the Patrolman's inquiry, stated that no one was hurt. After the arrival of the Patrolman, the three cars involved in the collisions were driven under their own power to Weldon.

Plaintiff testified that he drove that day from Weldon to Washington, D. C., by way of Petersburg, Virginia, and drove the next day to his home in Connecticut.

Plaintiff's testimony was sufficient to support a jury finding that, immediately after the collisions, while en route to his home and thereafter, plaintiff experienced pain and disability; and that, after arrival in Connecticut, plaintiff consulted doctors from time to time and received treatments. Even so, these facts were in evidence: (1) The car could be driven from the scene of the collisions and plaintiff could drive it from the scene of the collisions to Connecticut; (2) plaintiff stated repeatedly, when talking to Smith, Cain and the Patrolman, that he had

Dotson v. Chemical Corp.

sustained no personal injury; (3) plaintiff's testimony in respect of his injuries, although corroborated by the testimony of his wife, was not supported by the testimony of any doctor whom he consulted and by whom he was treated; and (4) he deferred institution of his action until July 9, 1968, nearly three years from the date he asserts he sustained personal injury. Although the evidence would have supported a finding that plaintiff sustained personal injury as a result of the collision, whether such finding should be made was a matter for the jury to determine.

It must be presumed the judge charged the jury to answer the first issue, "No," if plaintiff failed to satisfy them from the evidence and by its greater weight that the collision was proximately caused by negligence on the part of Cain; and that the judge also charged the jury to answer the first issue, "No," if plaintiff failed to satisfy them from the evidence and by its greater weight that plaintiff sustained personal injury as a result of the collision.

Plaintiff's action is to recover damages on account of alleged *personal injuries* he sustained as a result of the collision. As indicated above, the first issue included whether plaintiff sustained *any* personal injury as a result of the collision. *If* the jury had answered the first issue, "Yes," they would have determined the *extent* of such personal injury and the damages recoverable therefor when they considered the fourth issue. Having answered the first issue, "No," the jury did not reach the fourth issue.

When considered in the context of the facts narrated above, we perceive no prejudicial error in the court's refusal to permit plaintiff's counsel to elicit testimony from Dr. Moore concerning "orthopedic surgery," the training and qualifications of an orthopedic surgeon, and the nature and length of his own training and experience.

The Court of Appeals awarded a new trial solely on the ground stated above. Hence, as stated in the opinion, it was "unnecessary to discuss plaintiff's remaining assignments of error." It is noted that we have examined and considered these other assignments of error. In our opinion, none discloses prejudicial error or merits discussion.

The decision of the Court of Appeals is reversed and the cause is remanded to that court for the entry of a judgment

---

affirming the judgment entered by Judge Bailey in the superior court.

Reversed and remanded.